IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/<br>Appellee,<br><br>vs.<br><br>DEEPAK PATHANIA,<br><br>Defendant/<br>Appellant. | No. CR-F-08-009 OWW<br><br>**MEMORANDUM DECISION<br>AFFIRMING RESTITUTION ORDER** |

Deepak Pathania appeals from the restitution ordered as part of his sentence by Magistrate Judge Beck.

On December 8, 2006, Appellant pleaded guilty pursuant to a written Plea Agreement to causing bodily injury while driving a vehicle with a blood alcohol concentration of 0.08% or greater, in violation of 36 C.F.R. § 4.2 and California Vehicle Code § 23153(b). The factual basis to which Appellant admitted was:

> On August 11, 2006, on Highway 41 inside Yosemite National Park, defendant Deepak Pathania was driving a silver colored Nissan

1

>Xterra. At approximately 6:30 a.m., the
>defendant crossed a double yellow line while
>negotiating a downhill right hand curve. He
>struck head-on a black-colored Honda sedan
>being operated by Ashley Faith Herren.
>Herren was transported by ambulance to the
>Yosemite Medical Clinic where she was treated
>for multiple abrasions and bruises on her
>knees, right leg, and toe. Pathania showed
>significant impairment during a field
>sobriety test and was arrested. At
>approximately 9:10 a.m., Pathania provided a
>blood sample at the Yosemite Medical Clinic.
>The blood sample was later determined by a
>forensic alcohol analysis to contain 0.11%
>alcohol.

Pursuant to the Plea Agreement, Appellant agreed:

>The defendant also agrees the conduct to
>which he is pleading guilty requires
>mandatory restitution pursuant to Section
>3663A(c)(1)(B) of Title 18, United States
>Code. The defendant agrees to pay
>restitution to the victim of his violation of
>California Vehicle Code Section 23153(b), in
>an amount determined by the Court at
>sentencing.

Appellant was sentenced to a two-year term of unsupervised probation, with the special conditions that he pay a $990.00 fine, a $10.00 special assessment, and serve five days imprisonment.

Hearings were conducted on May 17, 2007 and December 17, 2007 on the issue of restitution. The parties stipulated that property damages in the amount of $11,153.25, medical expenses in the amount of $2,085.00, and replacement cost of a laptop computer in the amount of $500.00 were recoverable as restitution. The Magistrate Judge awarded the stipulated restitution and ordered that Appellant pay $3,000.00 in

restitution for lost wages.

At issue on this appeal is the $3,000 restitution for lost wages.

A.   <u>Standard of Review</u>.

The legality of an order of restitution is reviewed *de novo*, and factual findings supporting the order are reviewed for clear error. *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir.2007). Provided that it is within the bounds of the statutory framework, a restitution order is reviewed for abuse of discretion. *Id.*[1]

B.   <u>Consequential Damages</u>.

Appellant contends that the Magistrate Judge erred in imposing restitution for Herren's lost wages because MVRA does not authorize restitution for consequential damages. Appellant cites *United States v. Brock-Davis, supra*, 504 F.3d 991.

---

[1]As explained in *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir.2004), *cert. denied*, 546 U.S. 957 (2005):

> The MVRA makes restitution mandatory for particular crimes, including those offenses which involve fraud or deceit ... Under the MVRA, a court must order restitution to each victim of an offense, and the court cannot consider the defendant's economic circumstances ... The prior restitution statute, the Victim and Witness Protection Act ('VWPA'), required courts to consider the economic circumstances of the defendant prior to ordering restitution, and the granting of restitution was discretionary, not mandatory ... With these exceptions, the two statutes are identical in all important respects, and courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent.

In *Brock-Davis*, the defendant pleaded guilty to conspiracy to manufacture methamphetamine. As part of his sentence, the defendant was ordered to pay restitution pursuant to the Mandatory Victims Restitution Act of 1996 (MVRA), for testing and clean-up costs incurred for a motel room occupied by defendant during the course of the conspiracy. The Ninth Circuit ruled:

> [W]e agree with Brock-Davis that the district court erred by ordering restitution for consequential damages for lost income due to Bissell's inability to rent Room 107 during the cleanup. As it did in the sentencing hearing for Brock-Davis' co-defendant, the government now concedes that the $4,000 in lost income should not have been included in the restitution order. For one thing, the motel did not lose any income because it always had rooms available to rent during the slow winter season. Even if the motel had lost income, moreover, lost revenue is a consequential damage and is excluded from restitution in cases such as this. *See* 18 U.S.C. § 3663A(b)(1) ... Accordingly, the portion of the restitution order awarding $4,000 in recovery for lost income is vacated ....

504 F.2d at 1002.

Appellant's position is without merit. *Brock-Davis* involved restitution under 18 U.S.C. § 3663A(b)(1):

> The order of restitution shall require that such defendant -
>
> (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense -
>
>> (A) return the property to the owner of the property or someone designated by the owner; or
>>
>> (B) if return of the property under subparagraph (A) is impossible,

4

```
                    impracticable, or inadequate, pay
                    an amount equal to -

                         (i) the greater of -

                              (I) the value of the
                              property on the date of
                              the damage, loss, or
                              destruction; or

                              (II) the value of the
                              property on the date of
                              sentencing, less

                         (ii) the value (as of the
                         date the property is
                         returned) of any part of
                         the property that is
                         returned.
```

Restitution in this action is governed by Section 3663A(b)(2)(C):

> [I]n the case of an offense resulting in bodily injury to a victim -
>
> ...
>
> (C) reimburse the victim for income lost by such victim as a result of the offense.

It is undisputed that Ashley Herren was physically injured by Appellant. Section 3663A(b)(2)(C) expressly authorizes restitution to the victim of bodily injury for lost income that results from the offense.

C. **Factual Basis for Restitution Order**.

Appellant argues that the Magistrate Judge erred in imposing restitution for Ashley Herren's lost wages because there is no factual basis for the amount awarded.

The United States has the burden of establishing by a

5

preponderance of the evidence that the victim's damages were caused by the conduct of which the defendant was convicted. *United States v. Rice*, 38 F.3d 1536, 1540 (9th Cir.1994).  The preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence."  *In re Winship*, 397 U.S.358, 371 (1970). The preponderance of the evidence standard should be applied in a "practical, common-sense way."  *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir.1993).  Hearsay testimony may support restitution as long as it has a "sufficient indicia of reliability."  *United States v. Newman*, 144 F.3d 531, 542 (7th Cir.1998).  "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution."  *Savoie*, *id.* at 617.  However, Congress intended "to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction."  *Hughey v. United States*, 495 U.S. 411, 413 (1990).  "'[T]he main inquiry for causation in restitution cases [is] whether there was an intervening cause, and, if so, whether this intervening cause was directly related to the offense conduct.'"  *United States v. Hackett*, 311 F.3d 989, 992 (9th Cir.2002), quoting *United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir.1999).  "[T]he conduct underlying the offense of conviction must have caused a loss for which a court may order restitution ... [A]ny subsequent action that contributes to the loss, such as an intervening cause must

6

be directly related to the defendant's conduct.  The causal chain may not extend so far, in terms of the facts or time span, as to become unreasonable."  *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir.2001).

Appellant cites *United States v. Menza*, 137 F.3d 533 (7th Cir.1998), as authority that the MVRA requires the sentencing court provide a sufficient explanation of its reasoning supported by articulate findings of fact as a condition precedent to entering an award of costs.  In *Menza*, the Seventh Circuit followed the Fifth Circuit in *United States v. Patterson*, 837 F.2d 182, 183-184 (5th Cir. 1988), in holding:

> Even though the district court is not required by statute to make specific findings of fact, if the record does not sufficiently support its conclusion or clarify its reasoning, then we ask that the court provide us with that information, including its specific findings of fact, to facilitate our review.

137 F.3d at 538.

It does not appear that the Ninth Circuit follows the Fifth and Seventh Circuits.  In *United States v. Cannizzaro*, 871 F.2d 809 (9th Cir.), *cert. denied*, 493 U.S. 895 (1989), the Ninth Circuit refused to require findings of fact concerning the defendant's financial condition before imposing restitution:

> When Congress has directed the district courts to consider certain matters, it would be presumptuous for us to require district judges to make findings simply to ensure they have done what the statute commands.  Such 'procedural choreography' needlessly burdens our district courts without substantially achieving the legitimate interests of either

```
            the victim or the defendant ....

            The absence of a fact-finding requirement
            does not, of course, leave the district court
            free to disregard the statutory requirements.
            While Congress did not specify how the
            district court should consider each factor,
            the record must nonetheless reflect that the
            district judge had at his disposal
            information bearing on the considerations
            enumerated in section 3664.
```

871 F.2d at 811.

The absence of specific findings of fact does not compel reversal of the restitution order to pay $3,000 as lost wages.

Appellant argues that the $3,000 restitution order is not supported by a preponderance of the evidence because the United States did not elicit specific testimony or documentary evidence of Ashley Herren's employment or wages at the time of the accident and after the accident or a causal connection between the accident and her unemployment.

Appellant notes that the United States did not call Ashley Herren as a witness and relied solely on the testimony of Ashley's father, Kenneth Moore.

Mr. Moore testified at May 17, 2007 hearing. He testified that Ashley worked at a Starbuck's in Oakhurst at the time of the August 11, 2006 accident and was on her way to work when the accident occurred. (RT 15:11-14). He testified that Ashley left that job after the accident:

```
            A.  She wasn't able to go back to work.  She
            had an arrangement with Starbuck's
            Corporation where she wouldn't lose her
            seniority by working in Oakhurst, but
            normally she worked in the Fresno Starbuck's,
```

8

> one here in Fresno.
>
> When it came time for her to return to school, and to start there at that job, she found that she just couldn't put in the hours that she could - she was afraid - she was afraid to be driving and - but yes, she couldn't - she was not able to go back to the work because of the accident.

(RT 15:16-24). Mr. Moore testified that Ashley started working again at Starbuck's on May 18, 2007 (RT 30:16-19). Mr. Moore testified that Ashley was also working as a seating hostess for Delaware North Corporation. (RT 16:5-7). Mr. Moore was asked how much Ashley was earning per week at Starbuck's and Delaware North Corporation. Mr. Moore testified that he could not say exactly because the claim was pending with their insurance company, but "I'm going to say 7.50 an hour at Starbuck's" and eight dollars per hour at Delaware North Corporation. (RT 16:22 - 17:1). He testified that Ashley worked approximately 30 hours per week at Starbuck's and 20 hours per week at Delaware North Corporation. (RT 17:3-5). Mr. Moore testified that the 20 hours per week Ashley worked at Delaware North Corporation would have gone on only another 30 days or so from the date of the accident. (RT 30:8-10). Mr. Moore admitted during cross-examination that he was giving a rough estimate of the hours per week and that the hourly rates were plus or minus a dollar. (RT 18:20 - 19:4).

At the hearing on December 13, 2007, the United States represented:

> The victim's father is again in court and I asked him again - there was previous testimony that the judge will recall,

> hopefully, about the amount of lost wages,
> and he reminded me that it was between - she
> was making between seven and $8 an hour
> working 30 hours a week, and it was for
> approximately 20 weeks. So I think the
> restitution order that we would ask for on
> that would be in the amount of $4,000.

Appellant argued at the December 13, 2007 hearing that the absence of any documentary evidence concerning Ashley's hourly wages and work time as well as her failure to testify at the May 17, 2007 hearing, makes any award of restitution for lost wages speculative. Appellant argued that Ashley presumably saved gas money by not driving to and from work and that taxes and other required withholding would have been taken out of her earnings. (RT 9:9-25). Magistrate Beck ruled:

> I'm going to find that you pay restitution
> ... to the victim for lost wages in the
> amount of $3,000, and I think that's
> consistent with what the wages would have -
> what the deductions would have been, et
> cetera, and gives a little bit of flex for
> the hours.

Appellant argues the Magistrate Judge erred in accepting Mr. Moore's "vague and speculative" testimony as a sufficient basis for awarding $3,000 in restitution for lost wages in the absence of any documentary evidence reflecting that Ashley Herren had actual losses caused by his conduct. Appellant contends that Mr. Moore's "best guess" as to what Ashley had been making prior to the accident was insufficient to establish what she would have made while attending Fresno State had she not been in the accident.

Mr. Moore's testimony suffices to establish that Ashley was

10

working two jobs at the time of the accident; that she worked approximately 30 hours per week for Starbuck's and 20 hours per week for Delaware North Corporation; that her job with Delaware North Corporation would have terminated approximately 30 days after the accident, that she worked at Starbuck's in Fresno during the school term, that she was unable to return to work following the accident until mid-May 2007 because of her emotional state caused by the accident, and that she made between $7 and $8 an hour for the two jobs. The United States' request for $4,000 restitution for lost wages represented a reduction of the estimated hourly wage to $6.66 per hour for 20 weeks of working 30 hours a week. As the United States argues:

> This is below the California state minimum wage at the time. The magistrate judge's order reduced this further by ordering the defendant to pay $3,000 for lost wages, resulting in an effective wage rate of only $5/hour. Given the substantial reduction of this calculated amount below the level from Kenneth Moore's uncontradicted testimony, the defendant can not show that this order was clearly erroneous.

Although Mr. Moore's testimony about Ashley's hourly wage pertained to her summer job at Starbuck's, as the United States contends, "there is no reason to believe that when she returned to work at the Fresno Starbuck's she would have suffered a reduction in her salary, particularly one that went below the minimum wage."

Although the record would be more complete had the United States produced documentary evidence, Mr. Moore's testimony that

11

1 his daughter was working two jobs at the time of the accident,
2 that she worked at Starbuck's while attending college, the
3 estimated hourly wages, why she was unable to return to work
4 (recovery from her injuries and fear of driving because of the
5 accident), and when she returned to work, are all uncontradicted
6 by any evidence presented by Appellant.  Case authority requires
7 that the preponderance of the evidence standard by applied in a
8 practical, common-sense way; hearsay evidence and reasonable
9 approximation of the loss may sustain a restitution order.
10 Appellant cross-examined Mr. Moore and did not subpoena either
11 Ashley or her employment records to contradict Mr. Moore's
12 testimony.  It cannot be concluded that the $3,000 restitution
13 ordered by the Magistrate Judge for Ashley's lost income as
14 result of Appellant's offense is an abuse of discretion or
15 without factual foundation.

16     For the reasons stated, the $3,000 restitution ordered by
17 the Magistrate Judge for Ashley's lost income as result of
18 Appellant's offense is AFFIRMED.

19     IT IS SO ORDERED.

20 Dated:   **August 20, 2008**                  **/s/ Oliver W. Wanger**
                                                UNITED STATES DISTRICT JUDGE